IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PREP SOLUTIONS, LTD, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:22-CV-00123-JRG-RSP |
| | § | |
| DANIEL LEICHT, DIANA | § | |
| ROMANOVSKY,  JOHN DOES 1-25, | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND PRELIMINARY INJUNCTION**

Before the Court is Plaintiff Prep Solutions, Ltd.'s ("Prep Solutions" or "Plaintiff") Application to Convert Temporary Restraining Order into a Preliminary Injunction (the "PI Application"). (*See* Dkt. No. 27 at 3:2–5). Having considered the PI Application, the record before the Court, and the arguments of counsel at the evidentiary hearing of May 18, 2022 (the "Evidentiary Hearing"), the Court finds that the PI Application should be **GRANTED** and that the previously entered Modified Temporary Restraining Order (Dkt. No. 19) should be converted into a preliminary injunction as stated into the record at the Evidentiary Hearing and as further detailed herein.

I.   **BACKGROUND**

On April 22, 2022, Prep Solutions filed the above-captioned case against Defendants Daniel Leicht, Diana Romanovsky, and John Does 1-25 (collectively, "Defendants") asserting that Defendants infringed its copyrights with respect to fourteen information technology certification exams (the "Prep Solutions Exams"). (Dkt. No. 1). Prep Solutions moved for an *ex parte* temporary restraining order (the "TRO") enjoining Defendants from distributing the Prep Solutions Exams,

ordering Defendants to preserve business records, and freezing certain PayPal accounts related to the online sale of Defendants' practice exams (the "Accused Exams") which allegedly infringed Prep Solutions's copyrights in the Prep Solutions Exams. (Dkt. No. 4). The Court granted the TRO on April 26, 2022. (Dkt. No. 9).

Shortly thereafter on May 10, 2022, the Court held a show cause hearing to determine whether the provisions of the TRO should remain in place until the Court could hold a full evidentiary hearing on the merits of converting the TRO into a preliminary injunction. (*Id.* at ¶ 10). Following the show cause hearing, the Court extended the TRO for eight days and, on May 18, 2022, held the Evidentiary Hearing regarding whether the subsequently entered Modified Temporary Restraining Order (Dkt. No. 19)[1] should be converted into a preliminary injunction. (Dkt. No. 14). Counsel for both Prep Solutions and Defendants appeared in person, submitted declarations and briefing in support of their positions, and presented argument on the record. (*See* Dkt. No. 27).

## II.   LEGAL STANDARD

### A.   Preliminary Injunction

A court should issue a preliminary injunction if the movant shows: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Lakedreams v. Taylor*, 932 F.2d 1103, 1107–10 (5th Cir. 1991) (applying factors to copyright infringement claims). The decision

---

[1] During the eight-day period between the show causing hearing of May 10, 2022 and the Evidentiary Hearing, the parties submitted an unopposed Motion for Entry of Order Modifying the Temporary Restraining Order (the "Unopposed Motion"). (Dkt. No. 18).  The Court granted the Unopposed Motion and substituted the initial TRO with the agreed Modified Temporary Restraining Order on May 13, 2022. (Dkt. No. 19).

to grant or deny a preliminary injunction lies within the discretion of the district court. *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984).

## B.  Assert Freeze Provision in a Preliminary Injunction

"As the term implies, a preliminary injunction often involves only an abbreviated record developed while a lawsuit is in its early stages." *Cisco Sys., Inc. v. Huawei Techs., Co., Ltd.*, 266 F. Supp. 2d 551, 552 (E.D. Tex. 2003). The primary purpose of a preliminary injunction is to protect the plaintiff from irreparable injury and preserve the district court's power to render a meaningful decision *after* a trial on the merits. *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

An asset freeze is one such method a Court may use to preserve its power to render a meaningful decision following a trial on the merits. The Court can permissibly freeze assets to protect a plaintiff's equitable remedies—such as the equitable remedy of disgorgement, which is expressly authorized by the Copyright Act. 17 U.S.C. § 504(b); 17 U.S.C. § 502(a) (noting that a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright"); *see Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 310, 324–25 (1999) (noting that a preliminary injunction freezing assets and preserving the status quo pending the outcome of a case is proper where plaintiff seeks equitable relief); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 Fed. App'x 707, 709 (5th Cir. 2007) (affirming grant of preliminary injunction and holding that "the district court was authorized to preserve the status quo by entering a limited asset freeze" because a party "s[ought] equitable relief"); *see also Banister v. Firestone*, 2018 WL 4224444, at *9 (N.D. Ill. Sept. 5, 2018).

"A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009); *see also Newby v. Enron Corp.*, 188 F. Supp. 2d 684, 707 (S.D. Tex. 2002). Once a plaintiff has demonstrated entitlement to an asset freeze and made a showing of profits attributable to infringement earned by the defendant, the burden shifts to the defendant to show what, if any, assets are exempt from the freeze on the ground that they are not linked to the profits of the allegedly infringing activity. *See Datatech Enterprises LLC v. FF Magnat Ltd.*, No. C 12-04500 CRB, 2012 WL 4068624, at *5 (N.D. Cal. Sept. 14, 2012); *N. Face Apparel Corp. v. TC Fashions, Inc.*, No. 05 CIV. 9083 (RMB), 2006 WL 838993, at *3 (S.D.N.Y. Mar. 30, 2006).

## III.    DISCUSSION

### A.   Prep Solutions Has Shown That a Preliminary Injunction is Warranted

#### 1.   Substantial Likelihood of Success on the Merits

"A plaintiff is likely to succeed on a claim for copyright infringement if the plaintiff can establish: (1) ownership in a valid copyright and (2) copying by the defendant." *MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g*, No. CIV.A.4:04-CV-445-Y, 2004 WL 2187143, at *1 (N.D. Tex. Sept. 28, 2004); *see also Lakedreams*, 932 F.2d at 1007–08 (5th Cir. 1991) ("To establish 'ownership,' the plaintiff must prove that the material is original, that it can be copyrighted, and that [the plaintiff] has complied with statutory formalities"). There are two ways to prove copying: (1) with proof of direct evidence of copying or (2) through circumstantial evidence demonstrating that the defendant had access to the copyrighted work and that the two works are "probatively" similar. *Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 141–142 (5th Cir. 2004). Access need not be shown in some cases where "the two works are so strikingly similar as to preclude the possibility of independent creation." *Id.* at 142.

For the reasons stated below, the Court finds—based on the record at this early stage—that Prep Solutions has made a strong showing that it is likely to succeed on the merits and that this factor weighs heavily in favor of converting the Modified Temporary Restraining Order into a preliminary injunction.

### i.   *Prep Solutions Has Sufficiently Shown Ownership of a Valid Copyright*

Regarding its copyright ownership, Prep Solutions has presented certificates of registration with the United States Copyright Office for each of the fourteen Prep Solutions Exams. (Dkt. No. 1-2). Prep Solutions's certificates of registration are *prima facie* evidence that its copyrights are valid. 17 U.S.C. § 410(c). Prep Solutions has also presented the asset purchase agreement and transfer of copyright documentation, dated September 21, 2021, indicating that Prep Solutions commissioned each of the Perp Solutions Exams as works-made-for-hire and secured ownership of the respective copyrights from Straight A's Trading 27 PTY (LTD). (Dkt. No. 1-1 at 1, 4, 6). To contest the validity of Plaintiff's copyrights, Defendants identify one question from the entirety of the Prep Solutions Exams that was allegedly published prior to the date of publication listed on one of Prep Solutions's copyright registration forms. (Dkt. No. 27 at 17:1–19:24). However, the Court finds that this one overlapping question alone—isolated to one of Prep Solutions's fourteen copyright registrations and hundreds of test questions—does not overcome Prep Solutions's initial showing of ownership of valid copyrights.

### ii.   *Prep Solutions Has Sufficiently Shown Alleged Copying by Defendants*

Regarding the Defendants' alleged copying, Prep Solutions has presented evidence that users with the name "Diana Romanovsky and Dany Light" accessed the Prep Solutions Exams and software necessary to view the exam questions. (Dkt. No. 4-2 at ¶¶ 42–74). Further, Prep Solutions has shown that over 500 nearly identical questions subsequently appeared on Defendants' websites

after the dates that Defendants allegedly accessed and downloaded the Prep Solutions Exams. (*Id.* at ¶¶ 75–108). A side-by-side comparison of the text from the Prep Solutions Exam questions and Accused Exam questions demonstrates their substantial similarity:

### Text of Prep Solutions Exam (98-249-CR) Question 37

```
                    Exhibit PA1 - 98-349-CR - PrepAway.txt
341Question 37
342You are employed as an intern in ABC.com's IT department. The ABC.com network co
   >nsists of a single domain named ABC.com. All workstations on the ABC.com network
   > have Windows 7 installed.
343You want to make sure that all the data on your workstation's hard disk is inacc
   >essible to unauthorized persons in the event of theft.
344Which of the following actions should you take?
345A. You should consider making use of EFS.
346B. You should consider making use of DES.
347C. You should consider making use of RADIUS encryption.
348D. You should consider making use of BitLocker encryption.
349Answer D
```

### Text of Accused Exam (98-349) Question 247

```
                    Exhibit CL1 - 98-349 Exam - CertLibrary.txt
341Question 247
342You are employed as an intern in ABC.comte™s IT department. The ABC.com network
   >consists of a single domain named ABC.com. All workstations on the ABC.com netwo
   >rk have Windows 7 installed.
343You want to make sure that all the data on your workstationse™s hard disk is ina
   >ccessible to unauthorized persons in the event of theft.
344Which of the following actions should you take?
345A. You should consider making use of EFS.
346B. You should consider making use of DES.
347C. You should consider making use of RADIUS encryption.
348D. You should consider making use of BitLocker encryption.
349Answer D
```

(*e.g.*, Dkt. No. 4-7 at 9).[2] Notably, at the Evidentiary Hearing of May 18, 2022, not once did Defendants contest that they had accessed the Prep Solutions Exams from Plaintiff's website, downloaded the exam materials, and reuploaded the same as the Accused Exams on their websites. (*See* Dkt. No. 27 at 27:25–28:8). Accordingly, the Court finds that Prep Solutions has met its burden to show a likelihood of copying at this early stage and that this first factor weighs in favor of issuing a preliminary injunction.

---

[2] Aside from renumbering and slight formatting errors (highlighted in the respective exam images), the Prep Solutions Exam questions and Accused Exam questions are essentially identical. (*See* Dkt. 4-7).

## 2. Irreparable Injury

Irreparable harm requires a showing that (1) the harm to the plaintiff is imminent, (2) the injury would be irreparable, and (3) that the plaintiff has no other adequate legal remedy. *See Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). "[A] finding of irreparable harm is appropriate even where economic rights are involved when the nature of those rights makes "establishment of the dollar value of the loss . . . especially difficult or speculative." *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 810 n.1 (5th Cir. 1989); *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (finding that "price erosion, damage to ongoing customer relationships, loss of customer goodwill (*e.g.*, when an effort is later made to restore the original price), and loss of business opportunities" support a finding of irreparable harm).

The Court finds that Prep Solutions has made a sufficient showing of irreparable harm necessary to warrant the issuance of a preliminary injunction. The Court agrees with Prep Solutions that "[e]ach download from Defendants' websites is a lost sale for Prep Solutions . . . which will continue to draw customers away," result in lost business opportunities, and deplete the goodwill Prep Solutions has built up in the marketplace because Defendants offer all fourteen exams and hundreds of allegedly copyrighted questions "for free or at a steeply discounted price." (Dkt. No. 4-1 at 8). Further, Defendants' agreement to remove the Accused Exams from their websites on a prospective basis does not undermine Prep Solutions's showing of irreparable harm. As this Court has previously noted, a preliminary injunction serves to maintain the status quo and protect the Plaintiff from the "likelihood of [irreparable] harm should the conduct recur."[3] *Cisco Sys., Inc.*, 226 F. Supp. at 554.

---

[3] *See also Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 166 (5th Cir. 1993) ("The crucial test, in an action involving a request for injunctive or declaratory relief, where defendant has voluntarily ceased his allegedly illegal

### 3.   Threatened Injury Outweighing Any Harm

Prep Solutions asserts that this factor weighs in its favor because Defendants would suffer no harm if the Modified Temporary Restraining Order is converted  into a preliminary injunction—they would "merely be enjoined from engaging in [the] unlawful activity" of infringing Prep Solutions's copyrights and distributing the Accused Exams on their websites. (Dkt. No. 4-1 at 9–10). Notably, and as mentioned above, Defendants have voluntarily agreed to remove[] all of the allegedly infringing content" from their websites. (Dkt. No. 11 at 7). Thus, converting the Modified Temporary Restraining Order into a preliminary injunction will "permit the websites to transact business, [and] 100% of [the] generated revenue will be completely unrelated to Plaintiff's copyright claims in this action." (*Id.*).

Given that the contemplated preliminary injunction merely precludes Defendants from carrying out allegedly infringing activities and allows them to otherwise continue all other business on the websites at issue, the Court finds that the risk of irreparable harm to Prep Solutions outweighs the minimal harm, if any, placed upon Defendants. Accordingly, this factor favors issuance of a preliminary injunction. *See Olan Mills, Inc. v. Eckerd Drug of Tex., Inc.*, No. CA3–88–0333–D, 1988 WL 161314, at *3 (N.D. Tex. Dec. 14, 1988) (finding that a defendant will suffer minimal hardship if enjoined from further infringement of plaintiff's copyright when the injunction permits defendant to "continu[e] other types of [business]").

---

conduct, is whether it can be said with assurance that there is no reasonable expectation that the wrong will be repeated.") (citing *Meltzer v. Board of Pub. Instruction*, 548 F.2d 559, 566 n.10 (5th Cir. 1977), *cert. denied*, 439 U.S. 1089, 99 S. Ct. 872, 59 L.Ed.2d 56 (1979)). Here, in the absence of a preliminary injunction, Defendants could easily resume offering the Accused Exams on their websites pending the adjudication of the parties' dispute.

### 4.   Public Interest

The Court finds that converting the Modified Temporary Restraining Order into a preliminary injunction serves the public's "interest in preserving rights provided by the federal copyright law." *Lakedreams*, 932 F.2d at 1110. "[I]mplicit in copyright . . . law[]" is the policy judgment "that the public's interest in competition may be outweighed by the public's interest in preserving rights in intellectual property." *Allied Mktg.*, 878 F.2d at 810 n.1. Here, where a Plaintiff has shown a high likelihood of success on its copyright claim and Defendants have agreed to cease the sale of the allegedly infringing products, a preliminary injunction enforcing that agreement and maintaining the status quo ensures that rights provided by federal copyright law are maintained pending a final adjudication on the merits.

### B.   The Court Finds That an Asset Freeze is Necessary to Preserve Plaintiff's Equitable Relief

At the Evidentiary Hearing, the parties disputed the form that the asset freeze provision of the Modified Temporary Restraining Order should take if carried over into the preliminary injunction.[4] Prep Solutions argued that the currently frozen funds in the PayPal accounts represented only a small portion of the revenue derived from Defendants' ten-month period of infringement, and thus the Court should order Defendants to remit $735,000 into escrow or into the registry of the Court. (Dkt. No. 27 at 4:16–23). Defendants denied that they should be required to pay additional funds into escrow and further argued that "only 25 percent at most of [the $70,000 in the PayPal accounts at issue] could be held frozen, if at all." (Dkt. No. 27 at 21:24–25). Defendants asserted that Prep Solutions failed to demonstrate: (1) a likelihood of success on the

---

[4] The parties also disputed whether Prep Solutions should be required to increase the sum of its previously posted bond. Finding that the preliminary injunction, as converted, would allow Defendants to continue their business and establish new accounts unrelated to the allegedly infringing material, the Court found no compelling need to increase Prep Solutions's bond. (Dkt. No. 27 at 40:23–41:9).

merits to warrant an asset freeze, (2) equitable entitlement to the encumbered funds, and (3) a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages if relief is not granted. (*Id.* at 20:8–12).

After considering the arguments at the hearing, the Court finds that Prep Solutions has shown entitlement to a "continue[d] . . . freeze of the existing Paypal accounts" because there is clear evidence that the $70,000 is directly related to the allegedly infringing activity and constitutes a portion of the profit from monetization of the Accused Exams which flowed through the PayPal accounts during the period of infringement. (*Id.* at 41:19–42:7). Regarding Defendants' first assertion, the Court finds that Prep Solutions has sufficiently shown its likelihood to succeed on the merits as discussed above.

Regarding Defendants' second assertion, the Court finds that Prep Solutions has sufficiently shown that the frozen funds are linked to Defendants allegedly infringing conduct such that an asset freeze would preserve Plaintiff's equitable remedy. *See CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("[S]ince the assets in question . . . were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."). Here, Plaintiff has succeeded in demonstrating its likelihood of success on the merits and Defendants have acknowledged that "25 percent of the revenue at most is what . . . can be traced at all to the copyright infringing materials." (Dkt. No. 27 at 21:19–22). Presented with evidence that $42,000 entered the accounts over a period of three days, and thus up to $400,000 per month is estimated to have moved through the accounts during the ten-month period of alleged infringement, the Court finds that a continued freeze on the

$70,000 within the PayPal accounts is necessary to maintain the status quo and preserve Prep Solutions's disgorgement remedy pending further discovery in this case.[5] (*See id.* at 6:24–7:13).

Finally, the Court finds that Prep Solutions has sufficiently shown a likelihood of dissipation of the funds to justify an asset freeze at this early stage. Plaintiff asserts that Defendants could easily move the proceeds in the frozen accounts derived from allegedly infringing activity "outside the reach of the Court and thus thwart Prep Solutions's potential disgorgement remedy." (Dkt. No. 4-1 at 12) (citing *Lacoste Alligator S.A. v. 4case4cover4*, No. 18-62407-CIV, 2018 WL 10374596, at *4 (S.D. Fla. Nov. 2, 2018) (entering preliminary injunction freezing alleged infringer's assets by noting that "Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained")). Here, the Court notes that "based on discrepancies between the amounts received and the amounts that remain in the [PayPal accounts at issue], . . . a significant amount of money [(sums in excess of seven figures)] was moved" out of the accounts during the period of alleged infringement. (Dkt. No. 26 at 6:9–21; Dkt. No. 5:3–8). Given the significant volume of funds leaving the accounts and noting that the frozen $70,000 represents only a small portion of Plaintiff's disgorgement remedy, the Court finds that Prep Solutions has shown a likelihood that funds may be secreted from the accounts absent an asset freeze and that recovery on its disgorgement remedy may be unavailable if such funds are located outside of the jurisdiction of this Court.

---

[5] Finding that an asset freeze is warranted, the Court notes that the burden shifts to the Defendants to show what, if any, assets are exempt from the freeze on the ground that they are not linked to the profits of the allegedly infringing activity. *See Datatech Enterprises LLC*, 2012 WL 4068624, at *5. As noted at the hearing, discovery in this case may support modification of the preliminary injunction as appropriate. (Dkt. No. 42:1–7).

## IV.   CONCLUSION

After considering the PI Application, the arguments of counsel, and for the reasons discussed above, the Court finds that good cause exists to convert the Court's May 13, 2022 Modified Temporary Restraining Order into a preliminary injunction and **ORDERS** the following:

1.      Prep Solutions Application for Preliminary Injunction is **GRANTED**.

2.      The May 13, 2022 Modified Temporary Restraining Order (Dkt. No. 19) is **CONVERTED** into this Preliminary Injunction as announced into the record during the May 18, 2022 Evidentiary Hearing and further detailed below. (Dkt. No. 27 at 41:13–15).

3.      Defendants are **ENJOINED** from distributing, using, or selling practice exam questions registered by Prep Solutions under the following copyrights: Reg. No. TX 9-009-581, Reg. No. TX 9-009-571, Reg. No. TX 9-009-578, Reg. No. TX 9-009-521, Reg. No. TX 9-009-536, Reg. No. TX 9-009-575, Reg. No. TX 9-009-530, Reg. No. TX 9-009-531, Reg. No. TX 9-009-528, Reg. No. TX 9-009-540, Reg. No. TX 9-009-532, Reg. No. TX 9-009-606, Reg. No. TX 9-010-275, Reg. No. TX 9-009-538. This provision shall not prevent Defendants from hosting practice exam materials—except for the single question which overlaps with the Prep Solutions Exams—that predate the dates of publication on Plaintiff's copyright registration certificates. (*See* Dkt. No. 22 Exs. 2–13; Dkt. No. 27 at 19:8–24).

4.      Defendants are **ORDERED** to preserve business records pending discovery in this case. Defendants shall preserve such records, which include, but are not limited to, financial records and computer files relating to the use of or hosted at the following domains: www.examtopics.com, www.itexams.com, and www.certlibrary.com.

5.      The Court **ORDERS** that the PayPal account numbers 1684604710569964524 and 1604700856678352834 associated with Defendants, Defendants' websites www.examtopics.com,

www.itexams.com, and www.certlibrary.com, or the email addresses holtzergroup@gmail.com and waltersdorfgroup@gmail.com are to remain frozen until such further order from the Court.

6.      Notwithstanding paragraph 5 above, nothing in this Order shall affect or prohibit Defendants from operating www.examtopics.com, www.itexams.com, and www.certlibrary.com, and Defendants are entitled and permitted to open new PayPal accounts or use any other vendor for the processing of payments from those websites as may be required to continue their operation, as long as they are in compliance herewith otherwise.

7.      The intent of paragraphs 5 and 6 above is to maintain the status quo of those already-existing accounts while permitting Defendants to continue with the operations of their business through the opening of new accounts.  As necessary to effect the intent and purpose of this Order, Plaintiff and its counsel will advise PayPal that no restrictions exist prohibiting Defendants from opening new PayPal accounts.

8.      Defendants, and any persons or entities acting on their behalf, remain **ENJOINED** from transferring, disposing of, encumbering or secreting PayPal account numbers 1684604710569964524 and 1604700856678352834 in the name of, linked to, or otherwise associated with Defendants Daniel Leicht, Diana Romanovsky, the domains examtopics.com, itexams.com, and certlibrary.com, and email addresses holtzergroup@gmail.com and waltersdorfgroup@gmail.com

9.      This Preliminary Injunction shall take effect as of the expiration of the May 13, 2022 Modified Temporary Restraining Order (Dkt. No. 19) and shall remain in effect pending further order of this Court.

10.      The bond previously posted by Prep Solutions shall continue in place and is deemed adequate by the Court in light of the terms of this Order.

11.     Plaintiff and Defendants may apply to the Court for dissolution or modification of this Preliminary Injunction.

**So ORDERED and SIGNED this 2nd day of June, 2022.**

_____
RODNEY   GILSTRAP
UNITED STATES DISTRICT JUDGE

14